# UNITED STATES DISTRICT COURT
### For The
## DISTRICT OF MASSACHSETTS

**CIVIL ACTION No. 05-10477-GAO**

**BES ENTERPRISES, INC.,**
**Plaintiff,**
**v.**

**RONY NATANZON,**
**VERED TAYLOR,   and**

**ERN ACQUISITION, LLC,**
**Defendants**

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR TO TRANSFER THE ACTION TO MARYLAND AND REQUEST FOR ORAL ARGUMENT

Plaintiff submits this memorandum in opposition to Defendants' March 21, 2005 Motion to Dismiss or to Transfer this Action to the District of Maryland and Plaintiff requests oral argument.

## Introduction

This action concerns two basic claims.  In Counts I through VI, plaintiff seeks to recover from defendants Nantanzon and Taylor, pursuant to several different theories, the proceeds of more than 1200 checks, more than $230,000,  which were electronically collected from plaintiff's customers' bank accounts but then diverted by defendants Natanzon and Taylor rather than deposited into plaintiff's bank account.

Plaintiff is a family owned corporation which operates seven small retail stores of approximately 1800 square feet each.  (Ex. 1 ¶ 2).  Five of the seven stores are in Massachusetts.  (Complaint Ex. B).  Defendants operated and continue to operate national electronic check collecting businesses which service not only plaintiff but other Massachusetts businesses and was suppose to cause checks tendered at stores to be

electronically collected and deposited in merchant's bank accounts within one day. Between January of 2003 and June of 2003, as alleged in the complaint, ERN, LLC. ("ERN") collected the proceeds of checks tendered at plaintiff's stores and submitted by plaintiff for collection, but defendants Rony Natanzon and Vered Taylor caused all of the collected funds to be diverted by ERN and not paid to plaintiff. Vered Taylor has testified in a deposition in another action, that she provided her father, Rony Natanzon, a daily spreadsheet with the check funds collected on behalf of ERN's merchant customers; that Rony Nantanzon would then mark the spreadsheet as to which customers would receive their monies and which would not; and, that Vered Taylor would then cause only the collected funds approved by her father to be electronically transferred into the customers' bank accounts. (Ex.3 at 43-45). As a consequence, for six months, plaintiff received none of the proceeds of its customer's collected checks. Each month for six months, Plaintiff was sent a misleading monthly report which caused plaintiff to believe the collected funds had been deposited into its bank account, permitting the embezzlement scheme to continue. (Ex. 1 ¶ 10; Ex. 2 ¶ 9).

The second claim, Count VII, seeks to recover from ERN Acquisitions, LLC. ("ERN Acquisitions") the same monies on the basis of a *defacto* merger or implied assumption of the contract between ERN and plaintiff. As described by defendants, ERN filed a Chapter 11 bankruptcy petition in April of 2004. Although its books reflected a debt to plaintiff of over $232,000 for the diverted check proceeds, plaintiff was never scheduled as a creditor and received no notice of the bankruptcy proceedings. (Ex.1 ¶ 11 - 13, 15; Ex. 2 ¶ 10 -11, 15; Ex. 4). A Trustee was appointed and in July of 2004 certain assets of ERN were sold to ERN Acquisitions and ERN ceased operations.

As defendants correctly point out (Memorandum at 12-13), the plaintiff's contract and account was not among the assets purchased by ERN Acquisitions.  Indeed, in July of 2004, the bankruptcy trustee also sought and received permission to reject all of the contracts of the category or class such as plaintiff's contract. Again, never having been scheduled as a creditor, plaintiff received no notices and knew nothing about the bankruptcy proceedings, the sale of assets or the rejection of contracts.  (Ex. 1 ¶ 11 -13, 15 ; Ex. 2 ¶ 10 -11, 15).

ERN Acquisitions, using the same name that ERN had used, National Check Services, the same address, employees, web site and phone number of ERN (with no notice to or agreement from plaintiff) surreptitiously took over plaintiff's contract with ERN.  From July of 2004 until today, ERN Acquisitions processed checks electronically for plaintiff, withdrew fees from plaintiff's Massachusetts bank account, provided reports and called plaintiff about issues - all with no notice that it was ERN Acquisitions and not ERN.  (Ex. 1 ¶ 14; Ex. 2 ¶ 12 -13).  Plaintiff never authorized any such actions by ERN Acquisitions and did not know that ERN Acquisitions had substituted its performance under the contract for that of ERN until October of 2004.  (Id.)  In October of 2004, plaintiff discovered the missing funds and called the ERN telephone number to demand its money, only to be told for the first time that they were a "different company."  (Ex. 2 ¶ 15).

<u>Argument</u>

<u>1.  Count VII States An Actionable Claim Against ERN Acquisitions for Defacto Merger or Implied Assumption of the Contract Based Upon Its *Post* Bankruptcy Conduct.</u>

Defendants argue that ERN Acquisitions cannot be liable as a successor to ERN because a July 9, 2004 Bankruptcy Court order provides that ERN Acquisitions shall not

be liable and that ERN Acquisitions did not acquire from the Bankruptcy Court plaintiff's 2002 contract. (Defendants' Memorandum at 10-13). Plaintiff's claim however is based not on the acquisition of assets from the Bankruptcy estate but on ERN Acquisition's conduct *after* July 9, 2004. Indeed, plaintiff agrees with defendants that ERN Acquisitions did not purchase plaintiff's contract from the bankruptcy court. In fact, the Bankruptcy Trustee rejected the contracts of the class plaintiff had with ERN.

Plaintiff's position is that ERN Acquisitions, by its course of conduct after July 9, 2004, voluntarily assumed the 2002 contract with plaintiff or entered into a *defacto* merger with ERN. No contract between plaintiff and ERN Acquisitions was ever entered into; yet, from July 9, 2004, when the Chapter 11 Debtor ERN ceased all operations, ERN Acquisitions, with no communication with or notice to plaintiff, simply assumed and performed the contract between plaintiff and ERN. (Ex. 1 at ¶ 11 - 14; Ex. 2 at ¶ 10 - 17).[1] Defendant ERN Acquisitions performed that contract, electronically collecting funds from checks submitted and charging plaintiff fees for services and depositing funds into plaintiff's bank account. ERN Acquisition even now is charging plaintiff a monthly fee for services under the ERN contract. This was done, notwithstanding the absence of any contract which ERN Acquisitions acquired from the bankruptcy court or entered into with plaintiff. The only authorization plaintiff ever granted for the processing of such checks and withdrawal of charges from its bank account was pursuant to the 2002 contract with ERN. The reasonably inferable explanation for this conduct is that ERN Acquisitions has assumed the contract with plaintiff or merged with ERN.

There is ample legal authority for an implied assumption of a contract or debt or a *defacto* merger based on the post-purchase conduct of ERN Acquisitions. See *LVI*

---

[1] Even on November 30, 2004, ERN Acquisitions was holding itself out as ERN. (Ex. A to Ex. 2).

*Services, Inc. v. Academy of IRM*, 106 Md. App. 699, 709, 666 A. 2d 899 (1995); *Miller*

*v. Nissen Corp.*, 83 Md. App. 448, 453, 57 A. 2d 758, 760-61 (1990); *Cargill, Inc. v.*

*Beaver Coal & Oil Co., Inc.*, 424 Mass. 356, 359-61 (1997); *McCarthy v. Litton*

*Industries, Inc.*, 410 Mass. 15, 21 -22 (1991).

Accordingly, since Count VII is not predicated on a theory that ERN Acquisitions

is liable because it purchased plaintiff's contract from the bankruptcy court but rather on

its post Jul9, 2004 conduct, the bankruptcy court's order that the acquisition of assets was

free and clear of debts is irrelevant and the motion should be denied.

## 2.  The Forum Selection Clause Is Inapplicable or Should Not Be Enforced in the Circumstances of this Action.

Defendants seek dismissal based upon a forum selection clause contained in the

small print on the back of a form never provided to plaintiff.[2]  Contrary to the assertions

in defendants' affidavits that it was their "regular practice" to provide the "Merchant

Copy" of their form to customers, plaintiff was never provided a copy of the terms and

conditions on which defendants rely and had no knowledge of the forum selection clause

until after this action was filed.  (Ex. 1 ¶ 4 - 6; Ex. 2 ¶ 3).  Indeed, as plaintiff's copy of

the forms attached to the complaint demonstrates, their copy was a simple Xerox of the

front page only and not the "Merchant Copy" with printed terms on the back.

Enforcement of the clause should be denied because defendants Taylor and

Nantanzon are not parties to any such contract and it would be unfair and inequitable to

permit ERN Acquisitions to enforce the clause in the circumstances of this action.

---

[2] The assertion that there is no suggestion the plaintiff was unaware of the forum selection clause (Memo at 9) is disingenuous because defendants' counsel was in fact advised in writing prior to the filing of its motion that plaintiff had no such contract provision in its files.  The suggestion that plaintiff is a sophisticated business (Id.) is macabre since defendants exploited unsophisticated merchants such as plaintiff who did not discover the monthly embezzlements, putting many out of business.

(a).  Defendants Nantanzon and Taylor Are Not Parties to Any Contract with a Forum Selection Clause

Neither Rony Natanzon nor Vered Taylor is a party to any contract which requires that they be sued for fraud, conversion, embezzlement and violation of Chapter 93A in Maryland.  Nor has the ERN bankruptcy trustee intervened and asked that the forum selection clause be enforced.  Indeed, defendants have cited no authority for the proposition that individual tortfeasors may claim the protection of a contractual forum selection clause in a contract to which they are not a party.  In *Roskind v. Hanna*, 1998 WL 1198799 (Mass. Super. 1998) at 4, Justice Brassard recognized the broad principles adopted in *Jacobson v. Mailboxes, etc. USA*, 419 Mass. 572 (1995), but denied enforcement of the forum selection clause as to a non-party to the agreement stating: "Since Rogers is not a party to the Stock Purchaser Agreement, the forum selection clause is not enforceable as to the claims against him."

Although counsel has found no appellate cases exactly on point, there have been a number of Massachusetts decisions where the courts have not enforced contract forum selection  clauses in tort actions or on behalf of persons not parties to the contract. *Stagecoach Transportation, Inc. v. Shuttle, Inc*., 50 Mass. App. Ct. 812, 818-9 (2001)(fraud claim did not arise under the contract); *Kirby v. Miami Systems Corp*., 1999 Mass. App. Div. 197, 201 (1999)(suit against manager for tortuous interference not subject to forum selection clause in contract to which manager not a party).

In *Jacobsson v. Mailboxes ETC U.S.A., Inc*., 419 Mass. 572 (1995), the Supreme Judicial Court construed California law on the enforcement of forum selection clauses and recognized a distinction between contract enforcement and tort claims.  The court ordered on remand that if the tort claims were the primary focus of the action, the forum

selection clause should not be enforced or that enforcement of the clause might not be fair in the circumstances of the case.  (Id. at 579-80).

### (b) ERN Acquisitions Should Not Be Permitted to Seek Enforcement of the Forum Selection Clause.

This is not a situation where plaintiff has signed a contract agreeing to sue ERN Acquisitions in Maryland, nor indeed a situation where plaintiff was even provided an opportunity to decide whether it wished to do business with ERN Acquisitions.  Rather, ERN Acquisitions surreptitiously assumed the ERN contract with no notice to plaintiff and no opportunity for plaintiff to decline to do business with ERN Acquisitions.

ERN Acquisitions nonetheless argues, inconsistently, that it is not a party to plaintiff's contract but that it should be permitted to invoke the forum selection clause in that agreement.  In *Earnst and Norman Hart Brothers, Inc*. v. *Town Contractors, Inc*., 18 Mass. App. Ct. 60, 67 (1984), the Appeals Court recognized the modern rule of enforcing forum selection clauses but described the approach to enforcement "as flexible and one where all equitable considerations will be taken into account." Here the equitable considerations include a panoply of reasons why the forum selection clause should not be enforced because it would be unfair and inequitable.  These include the deceptive conduct by ERN Acquisitions in assuming the contract (ERN Acquisitions' failure to give notice to plaintiff of the contracts terms or that it was being assumed), the material breach of the contract ***before*** ERN Acquisitions chose to assume the contract and that ERN had never provided the contract terms to plaintiff.

ERN Acquisitions was formed by the same individuals as had formed ERN, employed the same individuals and took over the records of ERN.  They are certainly chargeable with knowledge of a number of facts, among them the fact that there had been

a material breach of the contract, that the contract's terms had never been furnished to

plaintiff, that the breach had been concealed from plaintiff by misleading reports and that

plaintiff had no knowledge of the ERN bankruptcy, before ERN Acquisitions chose to

voluntarily assume the contract and substitute its performance for that of ERN.  In these

circumstances ERN Acquisitions should be held to the normal contract rule that a

material breach by one party excuses the other from further performance of the contract.

That is particularly true where plaintiff never had the opportunity to choose whether or

not to contract or do business with ERN Acquisitions and it surreptitiously assumed the

contract without notice to plaintiff.  In such circumstances ERN Acquisitions should also

be equitably estopped from relying on the forum selection clause because of its deceptive

conduct.  Certainly enforcing the forum selection clause in these circumstances would be

unfair and unreasonable.

    If the limitations of fairness and equity recognized in the cases relied upon by

defendants have any meaning, this case presents an appropriate one for refusing

enforcement.  Massachusetts courts in fact refuse enforcement of forum selection clauses

based on fairness factors such as those present in this case.  Cf. *AT&T Capital Leasing*

*Services, Inc. v. CJP, Inc.*, 7 Mass. L. Rptr. 508 (Superior Court 1997)(refusing to

enforce boilerplate forum selection clause where forum was determined by future

assignment of contract rather than agreement on a specific state); *Lava Laundry, Inc. v.*

*Daniels Equipment Company, Inc.*, 04-MBAR-383 (MA Superior No. 04-1410

2004)(denying enforcement of forum selection clause not provided to other party);

*Peabody & Arnold, LLP. v. Luxury Media Corp.*, 02-MBAR-64 (MA Superior

2002)(denying enforcement of a forum selection clause where it would have required two

separate actions and a Massachusetts resident would have been forced to litigate in California); *Kwasnieski v. Gulf Stream Coach, Inc.*, 99-MBAR-112 (MA Superior 1999)(refusing enforcement of a forum selection clause buried in a warranty clause)

   3.  Massachusetts May Exercise Personal Jurisdiction Over the Defendants Due to Their Extensive Contacts With Massachusetts and the Extensive Business Transacted Here.

        Federal district courts, when assessing personal jurisdiction in a diversity jurisdiction case, are the functional equivalent of a state court.  *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F. 3d 42, 51 (1st Cir. 2002).  Personal jurisdiction may be predicated on general or specific personal jurisdiction.  (Id.).  General jurisdiction is based upon continuous and systematic activity in the forum.  (Id.)  Although defendants have conducted a national business with many customers in many states, including many in Massachusetts (See Ex. 4), they have not disclosed their contacts with other Massachusetts businesses.  If the court has any doubt that adequate contacts exist for the exercise of specific jurisdiction over the defendants, consideration of the motion should be stayed pending discovery of facts exclusively in defendants control - which plaintiff believes would show persistent and continuous presence in Massachusetts rendering defendants subject to general jurisdiction in Massachusetts.  See *Levin v. Harned*, 304 F. Supp. 2d 136, 142 (D. Mass. 2003)(District court permitted jurisdictional discovery before ruling on personal jurisdiction).   Given the nature of the defendants' business, it is very probable that they have been involved in tens or hundreds of thousands of Massachusetts banking transactions and thousands of telephone calls, letters, reports and e-mails with Massachusetts businesses.  Plaintiff therefore requests that should there be any issue as to specific jurisdiction that action on personal jurisdiction be stayed pending discovery of facts related to jurisdiction.

As to specific personal jurisdiction, it is well established that the Massachusetts Long Arm Statute confers jurisdiction to the full extent of the due process clause and courts have at times proceeded directly to the constitutional issue rather than address the statute's requirements. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., supra* at 52; *Levin v. Harned,* 304 F.Supp. 2d 136, 145-6 (D. Mass. 2003).

(a) ERN Acquisitions. Jurisdiction over ERN Acquisitions is not predicated on contacts of ERN as argued by defendants (Memo at 15), but on ERN Acquisitions' post July 9, 2004 contacts with Massachusetts rendering services to plaintiff when it assumed by that conduct plaintiff's contract with ERN or *defacto* merged with ERN. The contract which ERN Acquisitions chose to assume had been executed in Massachusetts and required performing regular and on-going services for a Massachusetts business. Of necessity, when ERN Acquisitions chose to assume plaintiff's contract, it chose to undertake an ongoing and frequent involvement in Massachusetts, including collecting check funds from Massachusetts bank accounts, depositing funds into plaintiff's Massachusetts bank account, withdrawing its fees from plaintiff's Massachusetts bank account, making or receiving regular calls to Massachusetts about check transactions and sending monthly reports to Massachusetts. (Ex. ¶ 8 - 9; Ex. 2 ¶ 5, 14). ERN Acquisitions engaged in these Massachusetts contacts not only for plaintiff but, plaintiff believes, discovery will show that the same was true for other Massachusetts businesses as well.[3] In that regard, this case is indistinguishable from *Sonesta International Hotels Corp. v. Central Florida Investments, Inc*., 47 Mass. 154, 160-62 (1999). See also *Workgroup Technology Corp.*

---

[3] ERN's bankruptcy schedules indicate it was doing business with more than twenty other Massachusetts businesses to which it owed monies. (Ex. 4). Defendants have control over the information whether there were more and the number of such Massachusetts businesses for which ERN Acquisitions has performed work.

*v. MGM Grand Hotel, LLC*., 246 F. Supp. 2d 102,110-11 (D. Mass. 2003), holding that a few telephone calls, faxes and letters by a Nevada business concerning rooms for a conference in Nevada were sufficient to satisfy the Massachusetts Long Arm statute and constitutional due process, even where the defendant had never been physically present in Massachusetts.

The "arising out of" requirement in the Massachusetts Long Arm Statute has been held to be no more than a "but for" requirement. *Connecticut National Bank v. Hoover Treated Wood products, Inc*., 37 Mass. App. Ct. 231, 234-35 (1994). Indeed, the Massachusetts Supreme Judicial Court has rejected the First Circuit's use of a proximate cause standard to determine the reach of the Massachusetts Long Arm Statute. *Tatro v. Manor Care,Iinc*. 416 Mass. 763, 771-2 (1994). As the Massachusetts courts have repeatedly held, the contacts need "only bring the parties within "tortuous 'striking distance' of each other." *Connecticut National Bank, supa* at 235, quoting *Prejean v. Sonatrach, Inc*., 652 F. 2d 1260, 1270 n. 21 (5th Cir. 1981).

In *Tatro v. Manor Care, Inc*., *supra*, a California hotel was held to be amenable to suit in Massachusetts pursuant to Section 3(a), transacting substantial business in Massachusetts, for a personal injury at the hotel. Jurisdiction was predicated on having solicited and obtained business from at least ten Massachusetts businesses and maintaining mail and telephone contact with them. The court stated that "where associated with other forum-related activities, relatively minor contacts with a Massachusetts plaintiff have been held sufficient to satisfy the transacting business requirement." (Id. at 768). Quoting the First Circuit in *Hahn v. Vermont Law School*, 698 F. 2d 48, 50-52 (1983), Justice Greaney stated that when a defendant had made

purposeful efforts to service the market … in Massachusetts . . . the question of personal jurisdiction should not turn 'on … defendant's physical presence in Massachusetts." ( 416 Mass. at 768).  Just as in that case, defendants' contact with plaintiff in this case were "part of a larger systematic effort on its part to obtain business from Massachusetts businesses."  (Id. at 769).  Accordingly, ERN Acquisitions is subject to Massachusetts jurisdiction having chosen to assume the contract and perform services requiring on-going contacts with the forum and the claim is related to those contacts.

 (b)  Defendants Nantanzon and Taylor.  Defendants Taylor and Nantanzon engaged in concerted joint activity or conspiracy as to the diversion of plaintiff's monies and therefore the conduct of each of them is attributed to the other when assessing their amenity to the jurisdiction of Massachusetts courts.  *Daynard, supra at* 55 - 56. Defendant Vered Taylor concedes 10 to 15 telephone calls with plaintiff in Massachusetts and faxes every couple of months.  (Defendants' Ex. 9).[4]  In fact, Defendant Vered Taylor was plaintiff's principal contact at ERN.  She wrote to plaintiff in Massachusetts, regularly engaged in calls to plaintiff, oversaw the dealings with plaintiff (Ex. 1 ¶ 8; Ex. 2 ¶ 6) and she and her father personally diverted the funds collected from plaintiff's customer's Massachusetts bank accounts which should have been deposited into plaintiff's Massachusetts bank account.  Corporate agents such as the defendants are not sheltered from personal liability to suit in a foreign jurisdiction by the fact that they acted in their contacts with the foreign jurisdiction as the agent of a corporate entity.  *Yankee Group Inc. v. Yamashita*, 678 F. Supp. 20, 22 (D. Mass. 1998).

---

[4] The number of calls concerning rejected checks can be estimated based on ERN's monthly reports which list such checks.  Thus in March of 2003, there were 10 checks that were rejected out of approximately 120 checks and would have generated telephone calls.  (Defendants' Ex. 8).

Here the defendants concede that they have traveled to Massachusetts and there is substantial evidence that Vered Taylor engaged in a regular pattern of calls, mail, e-mail and faxes with the plaintiff in Massachusetts pursuant to an on-going relationship of providing services to plaintiff.  (Ex. 1 ¶ 8 - 10; Ex. 2 ¶ 5 - 9, 12 - 17).  These contacts are not the only contacts with the forum.  The ERN schedule of creditors (Ex. 4) suggests that there were at least twenty three other Massachusetts companies for which ERN was performing similar services and with whom the defendant Taylor was most likely having similar communications in her position as Manager of Check Services.  Substantially less than this level of forum contacts has been held sufficient to satisfy the due process requirements for personal jurisdiction even with no physical presence in Massachusetts. *Workgroup Technology Corp. v. MGM Grand Hotel, LLC.*, 246 F. Supp. 2d 102, 109 (D. Mass. 2003)(four telephone calls, five e-mails, three faxes and efforts to do business with other Massachusetts businesses); *Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc.*, 764 F. 2d 921, 931 (1st Cir. 1985)(sending four letters and receiving one telephone call from Massachusetts) .  In *Haddad v. Taylor*, 32 Mass. App. Ct. 332, 335-6 (1992), a New York attorney who had never been to Massachusetts was held subject to personal jurisdiction of Massachusetts courts on the basis of interstate mail and telephone conversations with the plaintiff in Massachusetts concerning the sale of land in Massachusetts.  In *Darcy v. Hankle*, 54 Mass. App. Ct. 846, 849-50 (2002), the court held that the defendant was amenable to the jurisdiction of the Massachusetts courts for injury inflicted in Massachusetts by his out of state conduct where the defendant conducted significant business in Massachusetts.  In *Barthel v. One Community, Inc.*, 233 F. Supp. 2d 125, 127-8 (D. Mass. 2002), out of state officers with minimal contacts (one had visited

Massachusetts only once) were held subject to long arm jurisdiction for a wage act claim based on their telephone calls and other contacts with Massachusetts.

In *Tatro v. Manor Care, Inc*., *supra* at 766-68, the court upheld jurisdiction over a California business for an injury in California even though the defendant had no physical presence in Massachusetts. The plaintiff from Massachusetts had contacted the defendant by phone but the defendant had engaged in business transactions with a number of other Massachusetts businesses. The court held that reserving a room was "but for" causation for the injury which later occurred in California.

(c)  *The Constitutional Assessment*.  The three prong assessment of constitutional due process is easily met in the circumstances of this action. The claims against defendants, as in *Daynard, supra* at 61, arise out of the defendants Massachusetts activities, performing services for plaintiff by collecting monies from Massachusetts bank accounts and transferring money into plaintiff's Massachusetts bank account, and the sending of mis-leading reports to Massachusetts which caused plaintiff to believe the funds had been transferred to its bank account.

Given the facts already testified to by defendant Taylor, that on her father's instruction, she purposefully diverted plaintiff's customer's check fees, thereby causing tortuous injury in Massachusetts, this court clearly has personal jurisdiction over defendants Taylor and Nantanzon.  The analysis by this court in *Levin v. Harned*, *supra* at 147-9, establishes a constitutional exercise of personal jurisdiction because the defendants, knowing that plaintiff and its bank account was in Massachusetts, "the intentional tort was individually targeted at the resident of the forum state, and the brunt of harm was felt there" when they diverted the check proceeds to be transferred to

plaintiff's bank account.  This diversion was then capped off by the sending to plaintiff in Massachusetts of six monthly reports that misled plaintiff into believing the funds to have been deposited into its Massachusetts bank account, permitting the diversion to continue for yet another month.

As to ERN Acquisitions, the contract claim is related because it grows out of defendant having undertaken a course of dealing with plaintiff in Massachusetts which required ongoing interaction between Massachusetts and Maryland as checks were submitted for collection and payment, fees charged, reports provided and issues discussed.  *Daynard supra,* at 61.

The purposeful availment component of the due process test is clearly satisfied in the circumstances of this action. As in *Levin v. Harned, supra* at 151, the test is met because defendants Taylor and Nantanzon "committed an intentional tort, the forum was the focal point of the alleged harm suffered by [plaintiff], and the alleged tort was expressly aimed at the forum. … defendants reasonably could be expected to be haled into court in Massachusetts because they knew that" their customer was in Massachusetts, the funds they diverted came from Massachusetts, the misleading reports they sent went to Massachusetts and the funds they diverted should have been deposited into a Massachusetts bank account.  *Workgroup Technology Corp. supra* at 114 (4 telephone calls, 5 e-mails and 3 faxes to Massachusetts held to be purposeful availing of benefits and protection in Massachusetts).

There can be little doubt that ERN Acquisitions also made a purposeful availment of the benefits and protections of doing business in Massachusetts when it unilaterally chose to service the ERN contract with plaintiff.  It knew plaintiff was located in

Massachusetts, that checks from five of plaintiff's stores in Massachusetts would be submitted for collection from Massachusetts banks, that it would be depositing collected funds into, and withdrawing fees from, plaintiff's Massachusetts bank account, providing monthly reports to plaintiff in Massachusetts and regularly dealing with plaintiff by phone, fax or mail on various administrative issues including refused checks. Accordingly, ERN Acquisitions cannot argue that it did not engage in a purposeful availament of the privilege of doing business in Massachusetts.

The exercise of personal jurisdiction in this case clearly satisfies the third prong reasonableness. The First Circuit when assessing the third factor, reasonableness, has noted that " 'parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other state for the consequences of their activities.' " *Daynard, supra* at 61 (citations omitted). Defendants have not shown, as they must, that defending in Massachusetts would be onerous in a special, unusual or other constitutionally significant way, rather than the usual burden of defending in a foreign forum. *Workgroup Technology Corp. supra* at 115. Having engaged in regular and on-going contacts with plaintiff in Massachusetts, defendants cannot reasonably claim that it is unfair to have to defend in Massachusetts. Massachusetts also has a substantial interest in the proper electronic processing of Massachusetts consumers' checks drawn on Massachusetts bank accounts, the proceeds of which should have been deposited into the Massachusetts bank accounts of Massachusetts merchants. It also has an interest in providing a convenient forum for its residents to redress injuries inflicted by out of state actors. *Daynard supra* at 62. Defendants have not demonstrated that having to defend in Massachusetts is

unreasonable given their "self-elected involvement with" plaintiff in Massachusetts, their other business outside of Maryland and their size and resources. *Sonesta International Hotels Corp. supra* at 162-3.

### 4. Defendant Has Failed to Meet Its Burden to Demonstrate Transfer Under Section 1404 is Appropriate

The standards for resolution of a Section 1404 transfer are well established and not disputed by plaintiff; however, there is a presumption in favor of the plaintiff's choice of forum and defendants have the burden of proving that a transfer is warranted on the facts of this case. *Workgroup Technology Corp. supra* at 116. Although defendants make conclusory and non-specific assertions that it has numerous witnesses and the location of records make Maryland a more convenient forum, when measured against the issues to be tried in this action, the assertions fail. This is a fairly simple and straight-forward action. As to defendants Nantanzon and Taylor, the claim is simply that for a six month period they diverted and converted to other uses the funds collected from plaintiff's customers' checks. The monthly reports of ERN establish all of the checks collected and the amounts that should have been deposited to plaintiff's bank account and those records are in Massachusetts because they were sent to plaintiff here. Plaintiff's monthly bank statements establish that those funds were not deposited. Accordingly, the core and critical records are already in Massachusetts and it is not clear what other records are necessary or relevant that are not already in Massachusetts nor what "numerous" other witnesses would be relevant. The testimony of Vered Taylor in a prior deposition (Ex 3) establishes defendant's diversion of the collected check proceeds from plaintiff's customers. It is therefore not clear what burden would be imposed on witnesses or even what Maryland witnesses would be necessary that would make the

District of Massachusetts unduly inconvenient.  By contrast, plaintiff has only three administrative employees and having to support litigation in Maryland with such a limited staff would impose a significant hardship.  Defendants have submitted no specifics of undue hardship for their witnesses.

As to the claim against ERN Acquisitions, it too is very straight-forward.  In July of 2004, it acquired the name, assets, records and certain contracts of ERN from the bankrupt estate.  There is no dispute it did not acquire any contract or account of the plaintiff.  Having the records, name, address and telephone numbers of its predecessor, it went about claiming to be ERN and exercising rights, performing services and collecting charges from plaintiff which could only be done pursuant to the  contract between plaintiff and ERN.

This claim is in large part established by defendants' own affidavits and exhibits demonstrating that it did not acquire plaintiff's contract from the bankrupt estate.  Again, simple reports of monthly activities and plaintiff's bank statements and communications from ERN Acquisitions (holding itself out as ERN) will demonstrate ERN Acquisitions conduct constituting an assumption of the contract and/or a *defacto* merger.  Once again, the relative burden on defendants is asserted only in conclusory, non-specific terms as compared to plaintiff's small staff in Massachusetts, where many of the relevant documents are already present.

Defendants claim that plaintiff agreed to a Maryland forum is also erroneous since, as discussed above, plaintiff was never given notice or the opportunity to decide whether it wished to do business with ERN Acquisitions which surreptitiously assumed the contract with no notice to plaintiff.

Defendants also make conclusory assertions that another similar action is already pending in Maryland which involves similar claims. That is not a fair or accurate characterization of the Barron Financial Litigation in Maryland. (Defendant's Ex. 10). Notwithstanding Barron Financial's allegations concerning improper business practices in the diversion customer monies, that litigation involves claims not by a merchant customer of ERN but by a former business partner of Rony Nantanzon and lender to ERN. The claims asserted are for breaches of or interference with a settlement agreement through the theft of corporate opportunities, waste and misappropriation of credit card residual fees, and the alleged improper diversion of funds out of ERN. (Defendants' Exhibit 10). These claims are of no relevance to the facts or legal issues presented in this action. Accordingly, the two actions are quite different. Indeed, there are substantial dissimilarities between the actions and no common fact or legal issues between this action and the Barron Financial Litigation. Given these material differences between the actions, there would be no judicial economies achieved by a transfer of this action to Maryland.

<u>5. Plaintiff Concedes RICO Venue Is Not Proper In Massachusetts</u>

Plaintiff concedes that RICO venue is not proper in Massachusetts. Should the court determine that this action's venue is otherwise proper in Massachusetts and the defendants are subject to personal jurisdiction here, plaintiff would voluntarily dismiss the RICO count and proceed on the remaining counts of the complaint.

<u>Conclusion.</u>

For the forgoing reasons defendants' motion should be denied (except for the RICO count which plaintiff will voluntarily dismiss if jurisdiction is retained by this

court), or consideration of the motion should be stayed pending discovery as to jurisdictional facts.   If the Court believes that the forum selection clause is applicable and should be enforced, then in the interest of justice[5] plaintiff requests that this action should be transferred to the United States District Court for the District of Maryland rather than dismissed.  See *Levin v. Harned, supra,* at 141 (D. Mass. 2003).

Respectfully submitted,

/S/ Brian W. LeClair

_____
Brian W. LeClair (BBO #291080)
12 Fox Run Lane
Marblehead, MA 01945
781-631-9981

---

[5] If Maryland applies a two year tort statue of limitations, although plaintiff had no knowledge of the claimed forum selection clause until March of 2005, more than two years and three months have passed since the diversion of the check proceeds began.